237081. Mr. Derryberry you may proceed. Good morning to the court. I am Barry Derryberry. I represent Brandon Workman, who is the appellant in this matter. The initial business I want to raise is the standard of review, which is the ground on which every decision of this court stands on. The brief that I have submitted emphasizes, although it cites the standard applicable to legal errors and factual errors, it emphasizes the de novo standard that applies to legal errors. The government's brief also cites both standards, but emphasizes the clearly of the burden of proof, because this is a legal issue in which we allege that the district court did not conduct the findings and analysis that's required by the unpublished PIDEA v. United States v. PIDEA decision from this court by Judge Holmes five years ago. Could we kind of break down the issues and match up the standard of review, since you brought that up? So one of the issues I think you're raising is who has the burden, correct, on this hearsay issue? That is embedded in my overall argument, that the court seemed to look, evidently look, to the defendant to establish unreliability. Right. And so is the question of who has the burden, is that a legal issue? It is. The primary legal issues are the standards in PIDEA, which are bringing published Tenth Circuit cases to us as well. The issue of is this unpublished case controversial? There was that question here a little while ago. So I wanted to start you off with what I thought was the easier question, so let me get to the harder one, and that is the issue of whether the hearsay evidence was sufficiently reliable. Is that a legal issue or a factual issue? It is a – it's not the primary issue. Okay, the primary issue is that – Is it an issue? Yes. We can get that one out of the way then. Is it legal or factual? It's – it goes to the prejudice or harm from the legal error. So I would like to roll out my legal error. Okay. I assume you'll get an answer on that one. And these weave in, is why I don't mean to hedge, but these sort of weave in together. All right. So that the court doesn't say, well, there's no there there. You're arguing about reliability, but there's not really a reason to question the reliability. And so I have pointed out things to show why it mattered in this case. And so Padilla is telling the courts that they may not assume that police reports are reliable when the court is conducting its Rule 32 fact-finding obligation that's triggered by an adequate objection to facts in a PSR. And so this reliability floor that Padilla is pointing to that is meant to satisfy Guideline 6A.1.3, which is there must be reliability, there must be adequate indicia of reliability for court to conclude that the information at stake or in dispute has – is probably accurate, has probable accuracy. And so that's the reliability floor. And Padilla says courts cannot resolve a disputed sentencing fact simply by assuming that information in a police report meets the reliability floor. And so that's what I'm saying occurred here, that the district court in the four instances that my brief cites where the court says nothing's been presented to me to cause me to question the reliability of these reports, that appears to be the court assuming that they are reliable. And so the switching of the burden of proof is an indication that the court did not proceed as Padilla requires. So I'm going to first note that you weren't the person making this argument to the district court. No, Your Honor. Okay. So I'll just note that. And the problem I have with your argument is I think it ignores the way these types of things unfold at the district court. Because the government gets up and they're going to – they're going to make their case based on hearsay, basically. And – which is fine if there's sufficient indicia of reliability. And your client's trial counsel says, oh, I object. It's hearsay. And then we get into this big, long discussion about it being hearsay, and you shouldn't just rely on hearsay, and they just want to – the government just wants to rely on hearsay. And the court basically gives trial counsel the chance to say there is a dispute over reliability. Because one thing that happens in a trial court is the court weeds out the non-disputed items. And he basically says, listen, I'm not hearing any suggestion that this information is not reliable. And trial counsel doesn't say, hey, wait a minute, Judge, that's exactly what I'm saying. It's not reliable and they haven't shown it is. And we just get into this amorphous stuff. And to me, your argument just sort of ignored by saying, well, it's the government's burden. The district court didn't make appropriate findings. I mean, it wasn't even – I mean, it was not really at issue. What do you say to that? Well, I say that defense counsel was saying to the court there are substantial reasons to question the reliability of the police reports and is holding up a letter that was received from Rachel Potts, the victim in this matter, where she says in the letter, which is read into the transcript that we have and is in the exhibits in the supplemental record, where she says, among other things, that police were trying to get her to lie about what happened. And then you – and there is the government's reliance on her digital statements to officers at the scene purportedly contained in police reports. She's a methamphetamine user slash addict also, so there's those credibility issues. Our attorney was highlighting the hearsay within hearsay nature of this. And so this is one reason that I put the Fennel, F-E-N-N-E-L-L, case in the brief, which is where the trial court relied on testimony from a probation officer who said, I interviewed a witness over the telephone and here's what the witness said, and reliability was at stake. And this court said in the Fennel decision that that was inadequate upon which the court could base a determination of reliability because the witness is this remote person that the court does not have a means in that situation to be able to assess the credibility of. And so the credibility of Rachel Potts here, who is kind of laundered through a police report, and police officers are quite unlike probation officers who might be trained to be reliable sources of credibility or believability, police reports are just containing the sort of fodder for prosecution that Padilla is telling us. But that would suggest then that police reports would never be sufficient. Now, Padilla clearly points out that's not the case. It's just that they can't be presumed to be. And based on Padilla, I'd never come in and say that they are unreliable because of those factors in Padilla. It's just that they can't be presumed to be reliable. There has to be more to establish reliability, which really gets us to what five minutes to go. I think it's a segue into the second way in which Padilla is failed in this case where it says that the court has to conduct an examination of the record. And I'm reading to the court, I know I shouldn't, as a whole to discern whether there is additional evidence to corroborate sufficiently the relevant information that the report is being offered to establish. And in Padilla, the district court said the police report is sufficiently reliable to establish a sentencing fact. That was inadequate. And we have those utterances by this court in this record, but that's not enough. Padilla talks about an examination of the entire record that has to occur. And one place in our record that really shows this occurring is page 41 of the sentencing transcript in volume three. And the court says, and this is just three sentences, as all this amounts to, the court says, I just received these witnesses' statements, so identify for me where that information is contained in the exhibits. He's pointed to exhibit four. The court says, it is in exhibit four. And I understand and appreciate defense counsel's objection, but those statements are supported by the witness statements produced and prepared from the sheriff's department. The court didn't even have time to read that because he's saying, can you point out to me where in this document I just got that these are in there? And that is not the totality examination of all of the records that is demanded by what Padilla is articulating. Counsel, could I ask you about something that is contained in the government's brief? Page 17, it says, on the assault question, the ultimate corroboration came from the defendant himself. He admitted, albeit likely unintentionally, he assaulted Ms. Potts when he revealed he slapped her. If that's so, why wouldn't that be dispositive for the enhancement? Because the requirement of 2K2.1b6 is use or possession of the firearm in furtherance of the other felony. And so that, as you just described, does not point to the firearm or involve the firearm. I mean, that doesn't say slap her with the firearm. And so the government does make a few points that sort of dance around the outer limits of the issue because the issue here is involvement of the firearm. And we can be looking at where she said he hit her with a firearm. We could be looking at where she said he pointed it at her and discharged it. But there is no corroboration outside of Rachel Potts' statement. Only she was a witness to those events if they occurred or didn't occur. So his admission does... Does the enhancement apply if the assault occurs while possessing a firearm as opposed to using the firearm? It has to be... It can be possession, but it has to be in furtherance of another felony. So there has to be involvement in the other felony, not circumstantial. I mean, I want to say contemporaneous possession is not adequate for that. Okay. I don't see furtherance in the guideline. It just says possessed... Used or possessed any firearm or ammunition in connection with. That's... Yeah. And I acknowledge that. I... But the requisite nexus in a lot of cases from this court requires that there has to be... It's not just simultaneous possession of a gun. It has to have a role in conducting the other offense, like burglaries and somebody goes in and finds a gun and steals it. And that's part of the burglary then. So those are the typical cases that we see. Can I reserve my remainder? You may. May it please the court. I'm Luke Rizzo, an AUSA from the Eastern District of Oklahoma. The court should affirm the district court's application of the challenged sentencing enhancement, the reasons being that the lower court stated on the record the correct legal standards it was applying for both its legal decisions and the factual findings, and then applied them appropriately. Is it problematic that the court said that I haven't heard anything that casts question on the reliability of Rachel Potts' statement? Doesn't that suggest that the judge unwittingly or wittingly flipped the burden? Well, Your Honor, I think at first glance and potentially maybe out of context, that certainly does seem problematic. But within the transcript, what he's trying to do is he's explaining to both parties who are essentially getting into the argument of they're trying to submit hearsay, and then the Rachel Potts letter, the victim's letter that defense counsel is trying to submit is also hearsay. And he's basically explaining to both sides, like, well, I haven't heard any reason this isn't reliable. But if you look, you know, the entire record makes it clear, and, you know, the district court, it puts this on the record that it does understand, you know, there needs to be indications of reliability for it to consider the sentencing enhancements. Let me just kind of test that a little bit. Isn't that a fair inference that the judge essentially is saying, I'm going to blame King Solomon? The defendant wants Rachel Potts' letter, you want the out-of-court statement from Rachel Potts, you're both arguing about it, and you both are arguing that the other side's presentation constitutes hearsay, and, you know, there's three, you know, there's, it's a binary inquiry. Is your evidence sufficiently, does it bear sufficient indicia of reliability? And does Rachel Potts' letter to defense counsel bear sufficient indicia of reliability? And then the judge says, well, all of it comes in or none of it comes in. I'm not sure that that is logically or legally correct, but that's really not the argument here. But then when the judge, in the context that you just explained 100% accurately, and then the judge says, but I haven't heard anything to cast question on the reliability of what Rachel Potts said, and so it seems a Solomonic decision, but I'm not sure that that is faithful to the government's burden on the government's part of that out-of-court statement to recognize that there has to be a finding of sufficient indicia of reliability. Well, I think the government's position is that the lower court certainly was explaining things to both parties on the record at this hearing. What the government did at the hearing was attempt to meet its burden, and the government's position is it did. That's why not only is the probation officer called, but the multiple documents and the pictures and everything that's admitted into evidence is effectively the government trying to meet that burden. And it's important to know, yeah, Rachel Potts, the victim, her hearsay statement is obviously important. It's the crux of those two paragraphs that are challenged at hearing those factual paragraphs. But there's also, you know, it's also noted there's other hearsay statements from witnesses on the scene, the ones who heard a gunshot, the ones who saw them walking away. You know, the court and the, well, you know, the court effectively finds that this hearsay bundle of evidence that we have, there's indications of reliability, effectively by the totality. Now, Rachel Potts, she comes in, you know, she presents to defense counsel a letter taking it back or rather maybe not fully endorsing the facts that the police have in their report. But it should be noted, you know, in, I suppose in the court's defense, you know, there's some equivocation at the scene of the arrest as well from her. She doesn't want to press charges, and I think there's an issue of a protective order. She doesn't want to get them in trouble. And I suppose her letter after the fact or later at the hearing, you know, at the end of the day, the court does admit, does consider it all to the judge's point. I mean, I think, again, the government can only work on its burden. And it's essentially that, you know, in this matter, the challenge that there's multiple aspects of support here. You know, the defendant, the assault of the victim, the defendant's domestic partner, she gave those statements to police. And she's saying that he hit me, and her injuries aren't hearsay, but they corroborate the hearsay. Her injuries are literal, you know. The pictures document that. The existence of other aspects, you know, supported in the police reports, those are the authors of the reports. They're on the scene. They're talking to her. They're visually seeing her. You know, while that is hearsay as well, it does corroborate, you know, the victim's hearsay statements. And the use of the firearm during the assault, it's further corroborated. The fact is, you know, when the victim says to the police when they arrive on the scene, he's in the trailer with a gun, that's hearsay, but it's absolutely true. That's not disputed. When he's found, you know, the defendant, he is convicted of being a felon in possession, so there's no dispute he possessed a gun, a revolver. In that revolver, there's a spent shell casing indicating that a round was fired. Multiple people said they heard a gunshot. The challenge facts here are that Rachel Potts said she was assaulted and the defendant had a gun. He assaulted her effectively with a dangerous weapon. He pointed the gun towards her head. He shot it. He hit her with the gun as well. That's the underlying felony. And, you know, the existence of the gun, the spent shell casing, her injuries, that's not hearsay at all. Those are different forms of evidence, and they do support the hearsay, and I think that is what the judge relied on when he was saying, you know, there's indications of reliability here. I would also, you know, just to answer the court's question, I think, you know, the slap alone, the reason why that's in the government's brief is to explain, you know, the defendant, he's not contesting everything. Like, he is saying an assault occurred. Why that? The court's question of whether that would be enough alone for the enhancement. The question would be whether that's effectively a simple assault in Oklahoma, and it very well could be a misdemeanor. Now, he does have prior domestics, which could make it a felony, but there's always a question of now that he's Indian under federal law, would prior state, you know, convictions be a part of this enhancement? So, at the end of the day, the government's position was, you know, we would have to, we're essentially arguing it's an assault with a dangerous weapon. Having, you know, with all that said, I think there is the, the other, you know, the other part where I think, you know, the defendant keeps mentioning this case Padilla. You know, it's an unpublished case. It goes, it goes into whether police reports are reliable or not. I think this, the government's position is simply that, like any other evidence, like any other statement, any other hearsay statement, it should be assessed for, you know, the indications of reliability. That's the standard. And with that said, I do think this is a pretty simple matter. I think the court actually does make a, you know, it finds, it does factual findings. It lays out its legal argument or the correct legal application. And, you know, if the court has any further questions, I'll be happy to answer them. But based on the nature of this case and this appeal, I'll cede my time if there's no further questions. Thank you, Counsel. Thank you, Your Honor. The error of law issue that is presented in this case is not answered by analysis of whether the record would support the district court's determination of reliability. That's a factual issue. We didn't get to that issue because the court did not conduct the examination. Instead, the court just made an assumption of reliability. Padilla, 11 seconds says, Judge, not so fast. And so I'll just refer the court to page 25 of the sentencing transcript because I don't have time to take a minute to go through it. But I think that's an example of going too fast. Thank you. Thank you, Counsel. I appreciate your arguments this morning. The case will be submitted and Counsel are excused.